IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| TERRY BRIGGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-cv-6039-NKL |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER**

Before the Court is Plaintiff Terry Lee Briggs's Social Security Complaint [Doc. # 3]. Briggs argues that the Administrative Law Judge ("ALJ") improperly refused to give controlling weight to the medical opinion of Briggs's treating psychiatrist, failed to base the RFC upon substantial evidence, did not base the RFC upon Briggs's precise limitations, and improperly discounted Briggs's credibility by failing to evaluate the subjective evidence of his disability. Because the Court finds that there is not substantial evidence in the record to support the ALJ's decision, the Court reverses the denial of Briggs's benefits and remands with instruction to award benefits to Briggs.

**I.  Background.**[1]

---

[1] The facts and arguments presented in the parties' briefs are duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

Briggs challenges the Social Security Commissioner's denial of his claim for supplemental security income benefits, under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et. seq.*

### A. Factual Evidence

Briggs alleges he became disabled on March 1, 2009, at age 45, on the basis of his paranoid schizophrenia and generalized anxiety disorder. He was self-employed in 2007 and 2008 and previously worked at various times as a construction worker, a drywaller and ranch hand. In his disability claims, Briggs reported that he was unable to work as of March 1, 2009, because that is when "he knew, with all his body pains and everything he'd been having, and got tired of hurting everyday" that he could no longer sustain full time employment. (Tr. 33).

On December 23, 2007, Briggs was admitted to St. Francis Hospital's mental health unit for psychiatric symptoms, including auditory hallucinations and homicidal thoughts, including thoughts of killing a man who assaulted him. His global assessment of functioning was 30. Briggs was noted by Dr. Gary Gronstedt to have a history of 6-8 suicide attempts, including overdosing, cutting himself, trying to hang himself, and burning himself. Dr. Gronstedt noted that Briggs appeared older than his age, was somewhat disheveled, was restless, with slightly pressured speech, had a blunted affect, including poor concentration, and was easily distracted. Briggs was diagnosed with a bipolar type of schizoaffective disorder, panic disorder without agoraphobia, generalized anxiety disorder, antisocial personality disorder, alcohol dependence and marijuana

2

dependence.  During his stay, Briggs stated he was on the verge of relapsing, had extra pyramidal symptoms from the medication he was taking at the time and reported having panic attacks, as well as seizure episodes.  He was easily aggravated by peers and staff, especially in groups.  Mental health staff noted Briggs threw a coffee cup in one group session and seemed to become easily agitated by peers and staff especially in groups.  Staff noted that Briggs complained of not sleeping well even though staff documented that he had gotten up to 6-7 hours of sleep per night.  Mental health staff did note that Briggs's affect became brighter during his stay.  Briggs was discharged on December 27, 2007.  His GAF score on discharge was 55.

On January 17, 2008, Briggs began repeated monthly assessments at the Family Guidance Center for Behavioral Healthcare.  Patricia Hogan, D.O., noted Briggs had a depressed mood with congruent affect, had anxiety and insomnia and "sees flies that aren't there and things moving and hears people calling his name when no one's there."  She indicated Briggs had a logical flow of thought and generally intact memory with no current evidence of delusions or hallucinations and that he was not suicidal, aggressive or threatening to others.  Dr. Hogan diagnosed Briggs with chronic paranoid schizophrenia, GAD, and Hepatitis C.  She noted Briggs was on the medications of Seroquel, Trileptal, and Ambien.  Dr. Hogan saw Briggs in March 2008 and May 2008 and recorded similar findings.

Then at the same medical center, Briggs began to be seen by Vickie Kimble Allen, F.N.P., who saw Briggs several times before his alleged onset date of March 1, 2009.  She

3

noted Briggs had a depressed mood but a logical flow of thought and generally intact memory. She recorded no evidence of delusions or hallucinations and stated Briggs was not suicidal, aggressive or threatening to others. However, on August 11, 2009, Ms. Allen stated that Briggs reported some suicidal thoughts. In September 2008, Briggs reported having a lot of anxiety and depression and unfit sleep. In December 2008, he reported being depressed and feeling suicidal. In March 2009, he reported not sleeping well, while on April 15, 2009, he reported sleeping better. On June 1, 2009, Briggs reported some suicidal thoughts. On August 11, 2009, Ms. Allen noted Plaintiff was calm, polite and maintained eye contact. In September 2009, Ms. Allen reported that Briggs was having problems with his staff at his place of residence. His mood was again noted as depressed. Ms. Allen noted that Briggs reported some suicidal thoughts over the previous month and that at times he would lash out at people. On September 28, 2009, Carrie Flanagan, M.S.W., observed Briggs with an anxious and irritable mood but denying suicidal or homicidal ideation. In October 2009, he reported that his depression and sleeping had worsened. In December 2009, he had to be accompanied to the center by his caseworker, Jessica Hausmann.

Briggs's medical progress notes at the Heartland Regional Medical Center listed 8 different medications he was on as of October 2008, and affirmed his already-existing mental diagnoses of schizophrenia and anxiety.

On April 22, 2009, Immanuel Uketui, D.O., diagnosed Briggs with esophageal reflux, hyperlipidemia, and depression. In May 2009, Briggs reported to the Family

4

Medical Center as a follow-up for a GI referral, and he reported being tired, losing hair and not sleeping recently. It was noted that his therapy should include consultation with a mental health counselor. Two weeks earlier, he had reported there as well, feeling tired or poorly for three months and reported that he had lost approximately 38 pounds in one year. He was told to follow up with his primary care physician and to consult with a mental health counselor.

Rohtashav Dhir, M.D., evaluated Briggs's complaints of nausea on June 23, 2009. Dr. Dhir diagnosed Briggs with several conditions, including constipation and recurrent episodes of abdominal pain and nausea. Dr. Dhir noted that Briggs had a generalized anxiety disorder, depression and paranoid schizophrenia. Dr. Dhir noted that Briggs's symptoms were related to worsening constipation that tends to build up over a few weeks, causing his abdominal pain and nausea and that it was important to keep his hypothyroidism under control.

On October 27, 2009, treating psychiatrist Sarah McGuire, M.D., at the Family Guidance Center, stated Briggs had a depressed mood and restricted affect. She diagnosed Briggs with paranoid schizophrenia and GAD. Briggs reported that for the previous month, he felt his depression and sleeping were getting worse. On that date, Dr. McGuire stated that Briggs had a logical flow of thought and generally intact memory. Dr. McGuire stated Briggs was not aggressive or threatening to others on that date, and was not experiencing delusions or hallucinations. On November 24, 2009, Dr. McGuire reported that Briggs still had a little bit of a depressed mood but was a lot better. On

5

December 22, 2009, Briggs denied recent depression but Dr. McGuire noted Briggs had insomnia, paranoia and that his paranoia had reached a point where he sometimes stayed home in case people "out there" were after him. Briggs also reported he had the urge to run after someone with a hatchet at work the previous day but was able to stop himself. Dr. McGuire also stated that Briggs still had some of his "old urges" and sobriety was difficult for him. Dr. McGuire observed that on the date of the examination Briggs was not aggressive or threatening and had a euthymic mood and a full affect.

On January 4, 2010, Dr. McGuire completed a Medical Source Statement-Mental (MSSM) and found Briggs extremely limited in the following areas: the ability to work in coordination or proximity with others; ability to complete a normal workday without interruption from psychologically based symptoms; and ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Briggs was markedly limited as follows: ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; ability to maintain an ordinary routine without special supervision; ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and ability to respond appropriately to changes in the work setting.

On June 25, 2009, Briggs's case manager, Jessica Hausman, L.S.W., completed a Third Party Report on Briggs. She reported spending at least an hour a week with Briggs,

6

working on coping skills, medication management, psychiatric management, and maintaining stability and anger management. She reported that Briggs lived in semi-independent apartments alone and that he tended to stay in the house unless he had business, with which Ms. Hausman often assisted him. Briggs was able to engage in activities of personal care, such as dressing and bathing, but he needed special reminders to take care of personal needs and grooming, as well as taking his medicine. Though Briggs prepared his own meals, Ms. Hausman reported that he made frozen food due to concentration issues and a limited attention span. Briggs did cleaning and laundry but needed help or encouragement to do things when he was depressed and/or isolating. Briggs's yard work was taken care of by the semi-independent apartments. Ms. Hausman reported that sometimes when Briggs was paranoid or depressed, he needed encouragement to leave home. Ms. Hausman also stated that Briggs was unable to remember to pay bills, handle a savings account or use a checkbook or money order due to concentration and memory problems. Though Briggs was able to finish tasks with reminders and extra time, Ms. Hausman stated that he could only concentrate for 10 minutes at a time. (Tr. 154-160). She noted he had become more apt to isolate due to an increase in his paranoia and that he was thinking that people were out to get him. She said that he self-isolated to avoid potential problems as the paranoia could make him quick to anger. Ms. Hausman also reported that Briggs could not follow spoken instructions well, and that the instructions must be rephrased in several ways. When

7

asked how well Briggs got along with authority figures, Ms. Hausman replied "Absolutely not well at all."

It was also noted by M. Stevens, when completing form SSA-3367 to pursue Briggs's SSA claim, that Briggs had some trouble answering his questions. Stevens noted that Briggs did not seem to understand many questions, that after most questions he would let out a big sigh and look confused, and that he would look at his caseworker who would then help him with the answer.

### B. The Administrative Hearing

On January 25, 2010, Briggs testified at a hearing in front of Administrative Law Judge Guy E. Taylor. Briggs testified that he had worked "steadily" up until March or April of 2009, the date of a hernia operation. He stated that he tried to work after his hernia operation but others had to step in to take up the slack. He testified he had stopped drinking in December 2008, but had last used marijuana three or four months ago. He testified that he had been taking medication for his paranoid schizophrenia for over two years, that he was sleeping poorly and that he had problems being around people. He stated that his medication controlled his reflux problems and helped with his anxiety and schizophrenia. Briggs stated that he used to just fly off the handle at people but now seemed to have time to think before he acted. (Tr. 33). However, he also stated that he tried to work around Christmas 2009 but that being around people turns him angry. (Tr. 40). He also testified that he has become physical with coworkers, does not like taking orders and that he has a problem with paranoia. (Tr. 41). He also testified that he has

8

"been having hallucinations, auditory and visual. And everything's kind of coming out in my dreams and my subconscious. And I pretty must just lock myself in my apartment." (Tr. 41). He also testified that he was having hallucinations even though he was on his medication. (Tr. 42). He further stated he has panic attacks lasting from an hour to a couple of hours, "[p]robably about two times a month." (Tr. 41-43). He testified that he did "all [his] housework," could lift a 12-pack of Coke and could count his own change. (Tr. 34, 36). However, he also testified that he was not good at "financial stuff," did not use public transportation because he had a complex about it, and that he had physical problems climbing a flight of stairs. (Tr. 34-35). He also testified he had difficulty concentrating and that he probably would not be able to follow directions on how to get someplace. (Tr. 36-36). He testified to limiting himself going out to once every week or two and not seeing friends or relatives. (Tr. 37). He also reported having nerve damage in his hands that causes him to drop things and that he had relied upon the support of his caseworker from Family Guidance, Jessica Hausman, for over two years. (Tr. 39).

A vocational expert also testified at the administrative hearing. The ALJ posed a hypothetical question with a limited range of "light work," which is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." (Tr. 45). The ALJ found the hypothetical claimant could occasionally "climb, balance, stoop, kneel, crouch, [and] crawl" and would "need to avoid concentrated exposure to heat and cold." (Tr. 45). In addition, the hypothetical claimant "would need to be limited to simple unskilled work and limited contact with coworkers,

9

Case 5:11-cv-06039-NKL   Document 12   Filed 02/06/12   Page 9 of 16

supervisors, and the general public." (Tr. 45). The vocational expert responded that the hypothetical claimant could perform the light, unskilled jobs of collator operator, connector assembler, and wrapping machine operator. (Tr. 46). When asked by Briggs's attorney, the vocational expert defined limited contact as meaning contact "on an occasional basis." (Tr. 47). The vocational expert further testified that if a person were limited to no contact with the public and co-workers and only superficial contact with a supervisor, the jobs cited by the vocational expert would not be available. (Tr. 48). When Briggs's attorney added an additional limitation, that because of problems with hallucinations the person would have difficulty concentrating to the point that they would be off task for up to two hours during the day, and they would need to be reminded of what they were doing, the vocational expert testified that no work would be available. (Tr. 48).

### C. The ALJ's Decision

The ALJ concluded that Briggs had not engaged in substantial gainful activity since April 28, 2009. The ALJ further concluded that Briggs suffered from the severe impairments of chronic paranoid schizophrenia and generalized anxiety disorder. (Tr. 14). The ALJ determined that Briggs's impairments did not meet listing-level severity, and concluded that Briggs has the residual functional capacity to perform light work and is capable of working in an environment of a simple, unskilled job involving limited contact with the general public, co-workers and supervisors. (Tr. 15). Additionally, the ALJ found that Briggs was limited to occasionally climbing stairs, balancing, stooping,

kneeling, crouching, and crawling and should avoid exposure to heat and cold. (Tr. 15). The ALJ then relied on testimony from the vocational expert to conclude that Briggs was not capable of his past relevant work, but based on his RFC, he could perform the work of a collator operator, connector assembler, or wrapping machine operator. (Tr. 19).

## II. Discussion

### A. Standard of Review

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citation omitted). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### B. Whether the ALJ Gave Sufficient Weight to the Opinion of Briggs' Treating Physician

Briggs argues that the ALJ erred in failing to give controlling weight to the opinion of the Briggs's treating psychiatrist, Dr. Sarah McGuire, who treated Briggs on three occasions. The ALJ chose to discount Dr. McGuire's Medical Source Statement-Mental

11

(MSSM) as being inconsistent with the doctor's own treatment records of Briggs. The ALJ also discounted Dr. McGuire's conclusions on the basis that they were allegedly more extreme than the conclusions reached by Briggs's case manager, Jessica Hausman. The ALJ chose instead to give greater weight to the opinions of the State agency non-examining medical consultant, adopting the residual functional capacity recommended by the consultant. (Tr. 18).

"ALJs are not obliged to defer to treating physician's medical opinions unless they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record." *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (internal quotes omitted). But an ALJ can only reject medical evidence "based on contradicting medical evidence, not on the ALJ's own judgments or opinions." *Id*; *see also Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990).

The Court first analyzes the ALJ's conclusion that Dr. McGuire's treatment notes were inconsistent with her final conclusions concerning Briggs's disability. The ALJ stated in his decision that Dr. McGuire's treatment notes, and those of her staff, including nurse practitioner Allen, show that "more often than not, [Briggs] was functioning adequately." [Tr. 18]. The ALJ also claims that Dr. McGuire's record shows that Briggs's conditions were controlled with medication. However, nowhere in Dr. McGuire's notes does she state such a conclusion. Rather, the ALJ's determination appears to be based upon selective interpretation of isolated comments which downplayed the effects of Briggs's impairments without taking into Dr. McGuire's entire treatment

12

record into context. *sSee Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989) ("In determining whether the Secretary's decision is supported by substantial evidence on the record as a whole, the court must take into consideration the weight of the evidence in the record both for and against the conclusion reached."). At various times during Briggs's treatment, it was noted that his mood was euthymic with full affect, that he smiled appropriately and that he was not acting in an aggressive or threatening manner. However, Dr. McGuire's treatment records from these same visits note that Briggs had the urge to run after a work colleague with a hatchet and that he suffered from insomnia, paranoia and self-isolating behaviors. Dr. McGuire also consistently noted Briggs's depressed mood with restricted affect and his diagnoses of paranoid schizophrenia and general anxiety disorder.

It is the task of the treating physician, not the ALJ, to weigh the importance of various clinical observations and to then use those judgments to develop a final medical assessment. For the above reasons, the Court finds that the ALJ committed legal error in substituting his own evaluation of Dr. McGuire's treatment notes in place of her own medical judgment. Further, the Court finds that even if the ALJ had properly exercised his authority in doing so, the ALJ's interpretation was not based on substantial evidence, as McGuire's medical opinion is supported by her treatment observations, as well as those of her staff, which when taken together, corroborate her ultimate findings of extreme or marked limitations in Briggs's social functioning, concentration, and other areas.

13

The ALJ also justified his discounting of Dr. McGuire's opinion on the grounds that it went "far beyond" the third party observations of Briggs' case manager, Jessica Hausman, and is thus inconsistent with the other evidence as a whole. However, the ALJ's conclusion that Dr. McGuire's findings were somehow more extreme than those of Ms. Hausman is not based upon substantial evidence. First, Ms. Hausman is not a treating psychiatrist but rather, a social worker, and her report is not coming from the same medically informed perspective as that of Dr. McGuire. However, even if comparing Ms. Hausman's report directly with that of Dr. McGuire, the ALJ's opinion was not based on substantial evidence in the record. In fact, the Court can identify no substantial aspect of Dr. Hausman's report which fails to corroborate Dr. McGuire's findings that Briggs suffered extreme or marked limitations in concentration, maintaining a routine, and working with others. As the ALJ noted in his decision, and as listed in the facts section above, Ms. Hausman found that Briggs was unable to perform several basic tasks, such as using a checkbook, due to concentration, memory and attention deficits; that he needed to be reminded quite often to do things when he was in a depression or self-isolating; and that he could only concentrate for 10 minutes at a time. (Tr. 154-160). Ms. Hausman also noted the troubling incidents of paranoia suffered by Briggs, which caused him to believe that people were out to get him, made him quick to anger, and caused him to self-isolate. Ms. Hausman also reported that Briggs was entirely unable to get along with authority figures. Not only do such findings corroborate those of Dr. McGuire and the other staff at the Family Guidance Center, but they also support

14

Briggs's subjective complaints of his own mental problems and difficulties performing daily personal or work activities.

For the reasons discussed above, the Court rules that the ALJ erred in discounting Dr. McGuire's treating opinion. This is a fundamental rather than a harmless legal error as there is not sufficient evidence in the rest of the record to justify the ALJ's decision. As discussed above, Ms. Hausman's report corroborates the findings of Dr. McGuire. Further, the medical evidence from Briggs' treatment before 2009, while occurring before the alleged onset of disability, does not contradict Dr. McGuire's opinion; rather, it details troubling evidence of psychiatric impairment, including a week-long psychiatric hospitalization, reports of suicidal and homicidal impulses, a history of self-harm, and repeated diagnoses of paranoid schizophrenia and generalized anxiety disorder. In light of the above record, the only evidence relied upon by the ALJ in his decision which can reasonably be said to contradict Dr. McGuire's findings comes from the non-examining state agency consultant, Dr. Keith Allen. However, the opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). Here, Dr. Allen filled out a mental residual functional capacity assessment and a psychiatric review technique, but did not provide any comments or explain how these findings were consistent with the medical evidence on record. The findings of Dr. Allen cannot be reasonably adopted in determining the RFC when they clearly conflict with the findings of treating psychiatrist Dr. McGuire, which are amply supported by the medical record.

Thus, while the ALJ clearly erred in discounting Dr. McGuire's opinion, a remand is not necessary because considering the record as a whole, including the findings of Dr. McGuire, Ms. Hausman, and the remaining medical record, there is not substantial evidence to support the ALJ's conclusion that Briggs is not disabled. The Court finds that the debilitating limitations recorded by Dr. McGuire would disqualify Briggs from any work that exists in significant numbers in the national economy. As the Court finds Briggs disabled based on his mental limitations alone, there is no need to conduct an inquiry into the ALJ's alleged errors in analyzing Briggs's physical limitations.

## III.  Conclusion

Accordingly, it is hereby ORDERED that Terry Lee Brigg's Petition [Doc. # 3] is GRANTED. The decision of the ALJ is REVERSED with instruction to award benefits.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: February 6, 2012
Jefferson City, Missouri